**Garth BRIDEN and Victoria Briden, Plaintiffs,**

v.

**ROAD SYSTEMS, INC., a corporation, Defendant.**

**No. 88–CV–73158–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 10, 1989.

Ronald Karp, Hurwitz, Karp & Wallach, P.C., Dearborn Hights, Mich., for plaintiffs.

David L. Brown, Petersmarck, Callahan, Bauer & Maxwell, P.C., Detroit, Mich., for defendant.

OPINION

GILMORE, District Judge.

This matter is before the Court upon a motion for summary judgment, claiming that Plaintiff's products liability suit is barred by the exclusive remedy provisions of the Worker's Disability Compensation Act of Michigan (WDCA), M.C.L.A. § 418.101, *et seq.* Jurisdiction is based on diversity. Plaintiff's wife, Victoria Briden, sues for loss of consortium.

On July 8, 1987, Plaintiff, Garth Briden, was injured when he fell from a truck trailer in the course of his employment for Consolidated Freightways Corporation (CFC). He claims total disability. His duties at CFC included the delivery of goods, and the driving of semi tractor-trailer units.

The trailer from which he fell was manufactured by Defendant Road Systems, Inc. (RSI). Plaintiff's employer, CFC, voluntarily paid worker's compensation to Plaintiff, even though, according to Plaintiff, he filed no petition for compensation, and there have never been any proceedings in the Bureau of Workers Disability Compensation.

At the time of the accident, CFC was a wholly owned subsidiary of the parent corporation, Consolidated Freightways, Inc. (CFI). According to Defendant, RSI was and is a wholly owned subsidiary of CFC. Plaintiff states that CFC and RSI are subsidiaries of the parent corporation CFI. This dispute of fact does not, in the Court's opinion, affect the outcome of the decision in this case. Significantly, both parties agree that CFI is a parent corporation to both CFC and RSI.

Defendant RSI is engaged in the manufacture and reconstruction of semi trailers exclusively for CFI and its subsidiaries,

including CFC. No repairs or sales are made to the general public.

This products liability action by Plaintiff against RSI is based upon RSI's design and manufacture of the trailer in question. Defendant's motion for summary judgment is based upon the exclusive remedy provisions of the WDCA, Defendant claiming that, because RSI and CFC are both owned by the same parent corporation, CFI, Plaintiff was effectively an employee of RSI and is thus limited to the exclusive remedy.

Factually, the exact relationship among CFI, CFC, and RSI is unclear. Plaintiff claims that CFI is a parent corporation, and CFC and defendant RSI are subsidiaries of CFI. Defendant claims that RSI is also a subsidiary of CFC. In spite of the factual question of the relationships, the dispositive issue is whether Plaintiff is effectively an employee of Defendant RSI, due to the relationships among CFI, CFC, and RSI as employers and Plaintiff as employee.

The Worker's Compensation Disability Act, M.C.L.A. § 418.131, provides, in relevant part:

> The right to recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease.

Both parties agree that the significant cases to be considered are *Wells v. Firestone Tire & Rubber Company,* 421 Mich. 641, 364 N.W.2d 670 (1985), and *Wodogaza v. H & R Terminals, Inc.,* 161 Mich.App. 746, 411 N.W.2d 848 (1987).

The *Wodogaza* court accurately summarizes the facts and holdings of *Wells.* It says:

> In *Wells,* the plaintiff was injured in the course of his employment at Muskegon Firestone Auto Supply while changing a tube and tire on a truck rim manufactured by the defendant, Firestone Tire & Rubber Company. At the time of the injury, Muskegon Firestone was a wholly owned subsidiary of defendant Firestone. All of the subsidiary's directors were employees of the parent corporation, and the latter carried the workers' compensation coverage for employees at Muske-

gon Firestone. Plaintiff, citing the parent corporation as his employer, filed for and received compensation benefits and subsequently filed a product liability suit against that same corporation. This Court reversed the trial court's denial of summary judgment to the parent corporation based on the exclusive remedy provision of the WDCA, and the Supreme Court affirmed in a 4 to 3 decision. The Supreme Court, applying the economic reality test to the facts in the case, engaged in a "reverse-piercing" of the parent corporation's corporate veil, concluding that it would be inequitable to deny that corporation the benefit of the exclusive remedy provision. The Court reasoned that if a parent corporation is, under the economic realities of the situation, the true employer of an injured worker, then the parent corporation should not be denied the protection of the exclusive remedy provision merely because the injured worker was employed in name by a subsidiary of the parent corporation.

161 Mich.App. at 750–51, 411 N.W.2d 848.

■ The economic reality test looks to the totality of the circumstances surrounding the performed work, and considers: (1) control of a worker's duties; (2) payment of wages; and (3) the right to hire, fire and the maintenance of discipline. 421 Mich. at 648, 364 N.W.2d 670. The *Wodogaza* court adds a fourth factor: The performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. 161 Mich.App. at 753, 411 N.W.2d 848.

In *Wodogaza,* plaintiff, an employee of Preston Trucking Co., Inc., a Maryland corporation, was injured during the course of his employment. He alleged that he sustained injuries when the forklift he was operating fell or overturned due to the actions of a co-worker who was driving a yard transfer tractor. The tractor was owned by defendant S & P Equipment, Inc., and the accident occurred on premises owned by defendant H & R Terminals, Inc. Both defendants were wholly owned subsi-

diaries of plaintiff's employer, Preston Trucking.

Plaintiff applied for and received workers' compensation benefits from Preston. Thereafter, plaintiff filed a complaint against defendants, alleging H & R was negligent in failing to properly maintain its premises, and S & P incurred liability under the owner liability provision of the Michigan Vehicle Code, M.C.L.A. § 257.401.

Defendants moved for summary judgment, alleging plaintiff's exclusive remedy was against Preston under the WDCA. Both parties argued that *Wells* applied and supported their respective positions. Plaintiff argued that the protection offered under the WDCA was limited by its terms to "an employer," which included Preston but not the defendants. Defendants responded that they and plaintiff's employer, the parent corporation, should be treated as one entity. The Court of Appeals reversed the trial court's granting of defendant's summary judgment.

Applying the economic reality test, the Court of Appeals noted that defendants were organized solely for the purpose of owning land or equipment, and renting the land and equipment back to Preston. Neither of the defendants had any employees other than the statutorily required officers, and their offices and activities were controlled by Preston. Neither carried workers' compensation coverage, nor was there any suggestion that any party other than Preston exercized control over plaintiff, paid his wages, or was responsible for the imposition of discipline. Under these circumstances, the court found it was clear that Preston, and neither S & P nor H & R was plaintiff's employer. 161 Mich.App. at 754, 411 N.W.2d 848.

The Court of Appeals noted that the circumstances in *Wells* clearly suggested that equity would not be served by failing to treat Firestone Tire & Rubber Company (Firestone), the parent company, as plaintiff's employer for purposes of the exclusive remedy provision. The court pointed out that, in *Wells*, Firestone was determined to be plaintiff's employer under the economic reality test, and plaintiff himself disregarded the corporate distinction between Firestone and its subsidiary, his actual employer, in asserting that the former was his employer for the purpose of obtaining workers' compensation payments. *Id.* at 755, 411 N.W.2d 848. The Court of Appeals *Wodogaza* noted that "[f]or these same reasons, the instant plaintiff would be precluded from suing Preston. It does not necessarily follow, however, that a preclusion from suing the parent corporation under an economic realities analysis also mandates a preclusion from suing the parent's subsidiary corporation." *Id.* at 755–56, 411 N.W.2d 848.

The *Wodogaza* court pointed out that the subsidiaries were seeking to shield themselves from tort liability without having assumed any concomitant liability for the payment of workers' compensation benefits, and that defendants had never accepted any responsibility for work-related injuries of their parent's employees.

The Court of Appeals recognized the general principle in Michigan that separate corporate identities will be respected, and corporate veils would be pierced only to prevent fraud or injustice. The court stated, however:

> [D]efendants point to no injustice resulting from our recognition of their nonemployer status, as determined under the economic reality test analysis. Liability alone constitutes no such injustice. Indeed, if negligence on the part of one or both of the nonemployer subsidiaries in this case brought about plaintiff's injuries, injustice would result by failing to permit plaintiff to seek compensation against the proper tortfeasor or tortfeasors.

*Id.* at 756, 411 N.W.2d 848.

The Court of Appeals also noted that the vast majority of states do not extend the reach of the exclusive remedy provision of a worker's compensation act by treating parent and subsidiary corporations as a single entity. Rather, courts generally respect the separateness of corporate entities. *Id.* (citing *Wells*, 421 Mich. at 657, 364 N.W.2d 670 (cases cited therein)).

The Court of Appeals also recognized that various business, financial, practical and esthetic considerations may move a corporate entity to diversify its structure through the creation of subsidiary corporations. The court pointed out that, within those considerations, there should be a recognition of the obligations that arise as a consequence of such diversification. "The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee." 161 Mich.App. at 757, 411 N.W.2d 848 (quoting *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 662 (6th Cir.1979)). Therefore, the *Wodogaza* court held that, under the circumstances of the case where the equitable and overriding public policy considerations present in *Wells* were non-existent, defendants could not obtain the protection of the exclusive remedy provision of the WDCA available to employers.

It is obvious that this Court must apply the economic reality test to determine if an employer/employee relationship exists between defendant RSI and plaintiff. The Court must also consider equitable and policy considerations, as well as the general rule in Michigan that separate corporate entities will be treated as such.

Defendant RSI argues strongly that, under the economic reality test, the Plaintiff is limited to the worker's compensation benefits he received. The factors to be considered in determining the economic reality test are: (1) who controlled the worker's duties; (2) who paid the wages; (3) who had the right to hire, fire, and maintain discipline; and (4) the worker's performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.

The Defendant, in analyzing its case, focuses on the fact that CFI is the parent corporation of both CFC and RSI, and suggests that the dispositive concern is the control of CFI over both of its subsidiaries. Defendant states in RSI's brief, referring to an affidavit of James Kelso, Manager of

Casualty Claims at CFI, that the following factors would indicate CFI to be the employer of both CFC and RSI workers:

(1) Subsidiary employees participate in Worker's Compensation, hospitalization and retirement programs provided by the parent company;

(2) CFI provides semi-trailers to CFC by way of accounting procedures where no money changes hands;

(3) Subsidiaries are listed on paper used in correspondence as a "CF company";

(4) Accounting for both RSI and CFC is handled by the parent company;

(5) Employees of both RSI and CFC received paychecks through the parent company's central accounting office;

(6) Both RSI and CFC pay into a central self-insurance fund for the purpose of paying Worker's Compensation claims;

(7) Subsidiary employees subject to some rules and regulations of parent company;

(8) CFI employees could if they wanted dictate the hiring and firing of some RSI and CFC employees;

(9) Subsidiaries of the parent company are organized under the Teamster's Union.

Defendant also argues that CFI handles all claims for all of its subsidiaries, including liability, Workers' Compensation, and the like; that CFI's legal counsel handles affairs for both RSI and CFC; that CFI maintains excess insurance coverage for all of its subsidiaries; and that the losses of one subsidiary affect the financial stability of all other subsidiaries. Based on these facts, Defendant argues that all employees of CFC and RSI are employees of the parent corporation CFI, and that Plaintiff, by suing RSI, has effectively sued his own employer and/or his co-employees.

Finally, Defendant argues that to allow the case to go forward would be inequitable, and would go against the public policy considerations of the WDCA. Defendant claims that, if the case did proceed and Plaintiff was successful, CFI would be

required to pay not only Workers' Compensation, but also third-party damages on the products liability suit. Furthermore, Defendant argues that CFI would have no recourse against any third-party defendant for reimbursement of the Workers Compensation benefits in that it would simply be suing itself.

Plaintiff approaches the economic reality test in a different manner. Plaintiff considered only whether RSI could be deemed an employer of Plaintiff. He claims that RSI had no control over his duties, did not pay his wages, and had no right to hire, fire, or discipline him. He states his duties as a truck driver in Dearborn were not an integral part of Defendant's business, which is building and reconstructing semi-trailers in Fontana, California, and asserts that, at all times during his employment with CFC, he had never even heard of RSI. Plaintiff claims that Defendant is attempting to effectuate a reverse piercing of the corporate veil by asking the Court to treat all employees, including those of CFC and RSI, as employees of CFI. Plaintiff argues that Defendant's reliance on *Wells* is unfounded because the facts in *Wells* are factually distinguishable.

Regarding CFI, the parent, Plaintiff states that CFI made a corporate decision to diversify its activities throughout the United States, and argues that the corporate veils were intended to create and maintain separate business identities for the activities conducted by each. Plaintiff contends that, if CFI intended to answer for the claims against the various subsidiaries, there would be no need for separate corporations.

The Court finds that Defendant's reliance on *Wells* is unfounded because the facts in *Wells* are factually distinguishable from this case. In *Wells*, the plaintiff filed for workers' compensation against the parent, even though plaintiff was working for the subsidiary, and then filed his third-party tort claim against that same parent alleging that he was an employee of the subsidiary. At the time of the injury, all of the subsidiary directors were employees of the parent, and plaintiff was subject to the rules and regulations of the parent and could be supervised, hired, or fired by the parent company.

*Wells* suggests that Plaintiff Briden might not be allowed to receive workers' compensation from CFC, the subsidiary, and also sue CFI, the parent, under the WDCA. However, Plaintiff here is not suing CFI; Plaintiff is suing another subsidiary of CFI–RSI. As the *Wodogaza* court pointed out, it does not follow that a preclusion from suing the parent corporation under an economic realities analysis also mandates a preclusion from suing the parent's other subsidiary corporations. *See Wodogaza*, 161 Mich.App. at 756, 411 N.W.2d 848.

Neither the *Wells* court nor the *Wodogaza* court considered the situation before this Court of a suit brought by an employee of one subsidiary against another, unrelated subsidiary. *Wells* considered the specific question: "Which of the two separate corporations, parent or subsidiary, was plaintiff's actual employer for purposes of the WDCA?" 421 Mich. at 647, 364 N.W. 2d 670. This suggests that there is only one "employer" for purposes of the WDCA. *Wells* did not consider whether various subsidiaries and its parent corporation should be considered as one entity, one employer, under the WDCA. This was not necessary as the plaintiff filed the worker's compensation claim *and* the personal injury suit against the parent company.

█ The Court is of the opinion that the motion for summary judgment should be denied. Under both the economic reality test and a review of equitable and public policy considerations, it would be unreasonable, in the Court's opinion, to treat CFC, CFI, and RSI as one entity for the purposes of the WDCA. Although Defendant's arguments on the surface appear to be appealing and persuasive, the Court believes that Plaintiff has approached the economic reality test in a more reasonable manner. As Plaintiff points out, RSI had no control of his duties, did not pay wages to him, and had no right to hire, fire, or discipline him. RSI was solely in the business of building and reconstructing semi-

trailers in Fontana, California, and, as Plaintiff points out, during all of the time he was employed at CFC, he had never even heard of RSI. It appears to the Court, therefore, that the economic reality test comes down in favor of Plaintiff and against Defendant. Following the approach of the Michigan Courts, RSI could not be deemed Plaintiff's "employer" under the WDCA.

Furthermore, the equitable considerations favor denial of summary judgment. CFI made a corporate decision to diversify its activities throughout the United States. It set up separate corporations, separately managed, that were intended to create and maintain separate business identities for the activities of each. It was perfectly proper for CFI to do that, but, considering the strong presumption of protection of corporate identities in Michigan, and equitable considerations for an injured employee, it appears to the Court that these facts too militate against summary judgment. Furthermore, it is significant that Plaintiff at no time petitioned for workers disability benefits, nor were there ever any proceedings pending in the Bureau of Workers Disability Compensation for Plaintiff. The workers compensation was voluntarily paid by Plaintiff's employer, CFC.

Therefore, for the reasons given, the Court finds the economic reality test, the presumption against piercing of corporate veils, and the equitable considerations in the case all militate against the granting of summary judgment.

The motion for summary judgment will be denied, and the case will go to trial.

Plaintiff may present an order.