*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT RAYMOND REED,

        Plaintiff-Appellant,

v

JUDITH SHACKELFORD HODGE, STATE FARM
MUTUAL AUTOMOBILE INSURANCE
COMPANY, MARC LOUIS ABDILLA,
AMERICAN ALTERNATIVE INSURANCE
CORPORATION, and CHARTER TOWNSHIP OF
VAN BUREN,

        Defendants,

and

HURON VALLEY AMBULANCE, INC.,

        Defendant-Appellee.

UNPUBLISHED
November 4, 2021

No. 353245
Wayne Circuit Court
LC No. 19-017359-NI

EMILY SCHENK,

        Plaintiff-Appellant,

v

JUDITH HODGE, also known as JUDITH HODGES
and JUDITH SHACKELFORD-HODGE,

        Defendant/Cross-Plaintiff,

and

MARC ABDILLA,

        Defendant/Cross-Defendant,

No. 354038
Wayne Circuit Court
LC No. 19-009820-NI

-1-

and

CHARTER TOWNSHIP OF VAN BUREN and
AMERICAN ALTERNATIVE INSURANCE
CORPORATION,

                Defendants,
and

HURON VALLEY AMBULANCE, INC.,

                Defendant/Cross-Defendant-Appellee.

_____

Before:  RICK, P.J., and RONAYNE KRAUSE and LETICA, JJ.

PER CURIAM.

        In these consolidated appeals,[1] in Docket No. 353245, plaintiff, Robert Raymond Reed, appeals by leave granted[2] the trial court's order granting summary disposition in favor of defendant, Huron Valley Ambulance (HVA).  In Docket No. 354038, plaintiff, Emily Schenk, also appeals by leave granted[3] the trial court's order granting summary disposition in HVA's favor.  At issue in these appeals is whether HVA is considered Reed's and Schenk's employer for purposes of the exclusive remedy provision of the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq*.

        On appeal, Reed and Schenk argue the trial court erred when it granted HVA's motions for summary disposition because there were questions of fact as to whether HVA was Reed's and Schenk's employer.  For the following reasons, we reverse the orders of the trial court and remand for further proceedings.

## I.  BACKGROUND

        The facts of these cases are largely not disputed.  These appeals arise from a single motor vehicle accident that occurred on January 4, 2019.  Schenk and Reed were working as emergency

_____

[1] *Reed v Hodge*, unpublished order of the Court of Appeals, entered October 2, 2020 (Docket Nos. 353245 and 354038).

[2] *Reed v Hodge*, unpublished order of the Court of Appeals, entered October 2, 2020 (Docket No. 353245).

[3] *Schenk v Hodge*, unpublished order of the Court of Appeals, entered October 2, 2020 (Docket No. 354038).

medical technicians (EMT) in the back of an ambulance driven by defendant, Marc Abdilla.[4]  As the ambulance was traveling northbound on Haggerty Road, it entered the intersection at Ecorse Road in the Charter Township of Van Buren, where it was struck by a vehicle driven by defendant Judith Hodge.  Hodge was traveling westbound on Ecorse.  Schenk and Reed were attending to a patient in the rear of the ambulance at the time of the motor vehicle accident.  Schenk and Reed claimed to have suffered injuries as a result of the accident and brought these lawsuits against HVA, among other defendants.  Although asserted in separate complaints, both Reed and Schenk's theories of liability against HVA sound in negligence.

In the trial court, HVA moved for summary disposition in both cases, asserting the trial court lacked subject-matter jurisdiction because the WDCA provided the exclusive remedy for injured workers.  For their parts, Schenk and Reed argued they were not employed by HVA, but instead by HVA's parent company, Emergent Health Partners (EHP).  The trial court agreed with HVA and granted its motions in both cases.  These appeals followed.

## II.  STANDARD OF REVIEW

In Docket Nos. 353245 and 354038, HVA moved for summary disposition under MCR 2.116(C)(4) and MCR 2.116(C)(8).[5]  This Court reviews de novo a trial court's decision whether to grant or deny a motion for summary disposition.  *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 321 Mich App 574, 579; 909 NW2d 533 (2017), remanded on other grounds by 503 Mich 917 (2018).  "When viewing a motion under MCR 2.116(C)(4), this Court must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact."  *Cork v Applebee's of Mich, Inc*, 239 Mich App 311, 315; 608 NW2d 62 (2000).  Additionally, "we examine whether the pleadings, affidavits, depositions, admissions, and documents in the case show that the trial court lacked subject-matter jurisdiction."  *Mich Head & Spine Institute PC v Auto-Owners Ins Co*, ___ Mich App___; ___ NW2d ___ (2021) (Docket No. 354765); slip op at 2.

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint.  All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.  A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.  When deciding a motion brought under this section, a court considers only the pleadings.  [*Dell v Citizens Ins Co of America*, 312 Mich App 734, 739-740; 880 NW2d 280 (2015) (cleaned up).]

---

[4] In her complaint, Schenk also alleged that the ambulance was owned by HVA.

[5] The trial court did not specify under which subrule it granted HVA's motions for summary disposition.  In addition, the trial court's scant reasoning in granting the motions does not reveal whether the trial court considered the parties' documentary evidence submitted with their summary disposition briefings.  Therefore, we address the parties' arguments under each subrule.

## III. DISCUSSION

The issues raised by Reed and Schenk in their appeals are virtually identical. Both appeals arise from a common set of facts and involve the same legal issue: whether HVA is considered their employer for purposes of the WDCA. In addition, HVA's arguments to the trial court and to this Court are virtually identical in each case. Thus, we will consider the arguments in each appeal collectively.

Without providing any reasoning, the trial court concluded that HVA was Reed's and Schenk's employer. In doing so, the trial court eliminated any recovery they would have in tort as a result of the exclusivity provision in the WDCA:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law. [MCL 418.131(1).]

Under this provision, the WDCA provides the exclusive remedy for an injured worker against his or her employer. *McQueer v Perfect Fence Co*, 502 Mich 276, 286-287; 917 NW2d 584 (2018). The only exception to this provision is instances where the employer commits an intentional tort. *Johnson v Detroit Edison Co*, 288 Mich App 688, 696; 795 NW2d 161 (2010). "[T]he exclusive remedy provision of the WDCA limits the liability of the employer and provides statutory compensation for employees regardless of fault." *Pro-Staffers, Inc v Premier Mfg Support Servs, Inc*, 252 Mich App 318, 323; 651 NW2d 811 (2002).

"This Court applies the economic-reality test to determine whether an employer-employee relationship exists for purposes of the WDCA." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 467; 606 NW2d 398 (1999). The economic-reality test involves the following factors: "(1) control of the worker's duties, (2) payment of wages, (3) the right to hire, fire, and discipline, and (4) performance of the duties toward the accomplishment of a common goal." *Id*. "In applying these factors, the totality of the circumstances must be examined, with no single factor controlling." *Id*.

Under MCR 2.116(C)(4), the trial court was not presented with sufficient evidence to conclude there was no issue of material fact as to each of the factors in the economic-reality test. For its part, HVA presented to the trial court Ron Slagell's affidavit, which asserted that HVA was a wholly-owned subsidiary of EHP. However, Slagell did not testify or attest to which entity controlled Reed and Schenk's work duties, paid their wages, hired, fired, or disciplined them, or that their job duties were for the purpose of accomplishing a common goal.

On the other hand, Reed submitted an affidavit stating that EHP controlled his work duties in that "EHP scheduled the dates and times that [he] was expected to work as an EMT." In

addition, Reed claimed he received payment for work from checks issued by EHP. He also stated he was supervised by EHP staff and did not receive any benefits, such as healthcare or transportation services, from HVA.

Although not presented to the trial court in connection with its motion, HVA has presented evidence to this Court undercutting Reed's and Schenk's factual claims. For example, Reed testified that he was initially hired by HVA in 2003, before EHP was even formed. Both Reed and Schenk also admitted they were wearing uniforms and in an ambulance provided by HVA on the date of the accident. However, because the touchstone is the application of the economic reality test, those facts were not dispositive, and they were not before the trial court until after HVA was dismissed from the suits.

Despite the relative lack of evidence submitted by HVA in its motion for summary disposition, HVA claims, relying on *Wells v Firestone Tire & Rubber Co*, 421 Mich 641; 364 NW2d 670 (1984), that its status as a subsidiary of EHP qualifies it as Reed's and Schenk's employer for purposes of the WDCA. HVA, however, misreads *Wells* in asserting that *Wells* dispensed with the economic-reality test for the more general proposition that any subsidiary is considered an employer under the WDCA. Rather, our Supreme Court expressly affirmed the use of the test:

> Following our departure from the common-law control test, this Court has consistently utilized the economic reality test when questions have arisen relative to the existence of an employment relationship. While this Court's earlier applications of the economic reality test dealt with the distinction between an independent contractor and an employee or, as in *Farrell v Dearborn Mfg Co*, 416 Mich 267; 330 NW2d 397 (1982), with dual employers in a labor-broker situation, we believe it to be appropriate and consistent to utilize the economic reality test in determining in this case which of two separate corporations, parent or subsidiary, was plaintiff's actual employer for purposes of the Worker's Disability Compensation Act. [*Id*. at 647.]

HVA is correct that the Court in *Wells* also addressed the concept of reverse piercing of the corporate veil when determining whether the defendant was an employer under the WDCA. *Id*. at 650-651. However, it did so as a result of the inequity that would result "under the facts of this case." *Id*. at 651. The Court explained:

> If the statute is to be construed liberally when an employee seeks benefits, it should not be construed differently when the employer asserts it as a defense to a tort action brought by the employee who claimed and accepted benefits arising from that employment relationship. There is absolutely no evidence that defendant maintained Muskegon Firestone for the purpose of insulating itself from its workers' compensation liabilities. Defendant supplied workers' compensation benefits through its insurance company and accepted responsibility for the work related injuries of its Muskegon employees. Indeed, under the facts and circumstances of this case, we would not have permitted Firestone to shield itself behind its wholly owned subsidiary in order to avoid payment of workers' compensation benefits to plaintiff. [*Id*. at 651-652.]

Therefore, while our Supreme Court recognized, in certain instances, it is appropriate to consider a subsidiary as an employer, the trial court must still engage in an analysis of the facts of each case to determine whether such a result is equitable. HVA completely ignores this requirement from *Wells*. And, even if the trial court had done such an analysis, it would be clear this case is not similar to *Wells*. In that case, the plaintiff sued the parent company that paid the worker's compensation benefits. *Id*. at 651. That is unlike the case here, where Reed and Schenk sued the subsidiary that did not pay their WDCA benefits.

HVA also relies on *James v Commercial Carriers, Inc*, 230 Mich App 533; 583 NW2d 913 (1998), in arguing that this Court treats subsidiaries as employers under the economic-reality test. That case, however, is not as broad as HVA would suggest. In *James*, this Court held that the defendant was considered the plaintiff's employer for purposes of the WDCA. *Id*. at 542-544. As in *Wells*, however, this Court did so on the basis of the specific evidence presented to the trial court:

> [W]e believe that under the totality of the circumstances of the present case, Fleet and defendant must be considered components of the same employer, their parent corporation Ryder, for purposes of the WDCA. In addition to sharing a filing for worker's compensation self-insurer status, these subsidiaries share numerous financial functions through their connection to the parent corporation. Cash management and treasury functions for all Ryder subsidiaries are performed by Ryder's central staff at its corporate headquarters in Miami. All Ryder customers send their payments to depository accounts that are dispensed into concentration accounts at the end of every day. The money in the concentration accounts is transferred into disbursement accounts that process all Ryder's subsidiaries' disbursements. Moreover, there is a unity of management between the parent corporation Ryder and each of its subsidiaries. Defendant and Fleet share the same three directors, one who is also a director, president, and CEO of Ryder, and another who is a senior executive vice president of Ryder. Defendant has twenty-seven officers and Fleet has twenty-two officers, nineteen of which they share. [*Id*. at 542-543.]

For its part, HVA did not present relevant evidence of the sort considered in *James*. Instead, HVA relied only on the parent-subsidiary relationship between EHP and HVA, claiming that the relationship was sufficient to establish it as Reed's and Schenk's employer. Therefore, the trial court erred when it concluded that HVA was entitled to summary disposition under MCR 2.116(C)(4). HVA simply did not present sufficient evidence to demonstrate there was no issue of fact as to whether or not HVA was their employer.

This conclusion is consistent with *Wodogaza v H & R Terminals, Inc*, 161 Mich App 746; 411 NW2d 848 (1987),[6] a case relied on by Reed and Schenk in the trial court. In *Wodogaza*, this

---

[6] Cases from this Court published before November 1, 1990, are not binding but may be considered for their persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

Court concluded that *Wells* did not control the outcome because in *Wells*, "the plaintiff sought damages against the parent corporation, whereas in this case damages are sought against the subsidiary corporations." *Id*. at 751-752. Moreover, addressing the equities of the case, this Court found the equities in favor of the defendant lacking:

> [T]he equities involved in these two instances are not identical. Most significantly, the subsidiaries in this case are seeking to shield themselves from tort liability without having assumed any concomitant liability for the payment of workers' compensation benefits. Defendants have never accepted any responsibility for the work-related injuries of their parent's employees. Second, as noted by the majority in *Wells*, the general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice. In the present case, defendants point to no injustice resulting from our recognition of their nonemployer status, as determined under an economic reality test analysis. Liability alone constitutes no such injustice. Indeed, if negligence on the part of one or both of the nonemployer subsidiaries in this case brought about plaintiff's injuries, injustice would result by failing to permit plaintiff to seek compensation against the proper tortfeasor or tortfeasors. Third, we are not unmindful that, as pointed out by Justice LEVIN in his dissent in *Wells*, the vast majority of states do not extend the reach of the exclusive remedy provision of a workers' compensation act by treating parent and subsidiary corporations as a single entity. [*Id*. at 756.]

For similar reasons, the trial court should not have granted HVA's motion for summary disposition under MCR 2.116(C)(8). Neither Reed's nor Schenk's complaint contains any allegation that would result in failing to state a claim. In fact, assertions regarding EHP and its relationship to HVA are not contained in their complaints. Similarly, nowhere in the complaints do they allege that HVA was their employer or otherwise controlled their job duties.

HVA's argument that Reed and Schenk were leased to HVA by EHP and, therefore, employees of both plaintiffs is also unconvincing. Contrary to HVA's contention, the mere fact that one company leases an employee to another does not render both companies as employers under the WDCA. In *Kidder v Miller-Davis Co*, 455 Mich 25, 40; 564 NW2d 872 (1997), our Supreme Court determined that "a labor broker relationship existed between CLS and Miller–Davis to such an extent that a dual or coemployer relationship was formed, precluding a separate tort action against the customer of the labor broker." Fatal to HVA's argument, the Court specifically noted that it "stop[ped] short of holding that a labor broker-customer relationship will always establish dual employer status as a matter of law." *Id*. at 40 n 7. Instead, the Court addressed the "economic realities of the employment situation," which dictated that "Miller–Davis was the plaintiffs' employer for purposes of the exclusive remedy provision of the worker's compensation statute." *Id*. at 40-41. Therefore, HVA was not entitled to summary disposition under MCR 2.116(C)(8).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Amy Ronayne Krause
/s/ Anica Letica