**Michigan Supreme Court**
**Lansing, Michigan 48909**

Chief Justice
Maura D. Corrigan

# Opinion

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED FEBRUARY 4, 2003**

HARRY E. WEAKLAND,

    Plaintiff-Appellant/Cross-Appellee,

v

No. 119495

TOLEDO ENGINEERING COMPANY,
INC., USF&G/ST. PAUL INSURANCE
COMPANY, and SECOND INJURY FUND,

    Defendants-Appellees/Cross-Appellants.

_____

PER CURIAM

I

In this worker's compensation matter, we are called on to construe the statutory provision that places the obligation on the employer to supply the injured employee with appliances that are necessary to alleviate the effects of the work-related injury. MCL 418.315(1). We affirm the Worker's Compensation Appellate Commission (WCAC) decision that only the modifications to a van constitute appliances within the meaning of subsection 315(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.315(1). Furthermore, we

overrule *Wilmers v Gateway Transportation Co (On Remand)*, 227 Mich App 339; 575 NW2d 796 (1998).

II

Plaintiff was employed as a bricklayer by defendant Toledo Engineering. In January, 1981, while at work, he was injured and disabled, and later began to receive worker's compensation. Subsequently, his physical health deteriorated, and by 1990 he was having difficulty walking any substantial distance without assistance. As his condition worsened, plaintiff acquired assistive devices, including a motorized cart, as well as a van that was customized to transport the cart.

Plaintiff sought reimbursement for the cost and customization of the van and other related expenses pursuant to MCL 418.315(1), arguing that these were "appliances" necessary to cure or relieve the effects of his compensable injury. The magistrate, after taking proofs on this issue, ordered reimbursement for the motorized cart and the reasonable cost of the van and its conversion. On appeal, the WCAC affirmed the magistrate's order regarding reimbursement for the cost of the van conversion, but reversed regarding the cost of the van and the cart.

The Court of Appeals denied plaintiff's application for leave to appeal. Plaintiff then filed an application for leave to appeal in this Court, and defendants sought leave to appeal regarding the award of reimbursement for the van

2

conversion. This matter turns on the proper construction of MCL 418.315(1).

                                    III

We review questions of statutory construction de novo. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). The fundamental rule of statutory construction is to give effect to the Legislature's intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). That intent is clear if the statutory language is unambiguous, and the statute must then be enforced as written. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992).

                                    IV

Subsection 315(1) of the WDCA governs liability of an employer for the cost of enumerated assistive devices:

> The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed. However, an employer is not required to reimburse or cause to be reimbursed charges for an optometric service unless that service was included in the definition of practice of optometry under section 17401 of the public health code, 1978 PA 368, MCL 333.17401, as of May 20, 1992. An employer is not required to reimburse or cause to be reimbursed charges for services performed by a profession that was not licensed or registered by the laws of this state on or before January 1, 1998, but that becomes licensed, registered, or otherwise recognized by the laws of this state after January 1, 1998. Attendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons.

3

> After 10 days from the inception of medical care as provided in this section, the employee may treat with a physician of his or her own choice by giving to the employer the name of the physician and his or her intention to treat with the physician. The employer or the employer's carrier may file a petition objecting to the named physician selected by the employee and setting forth reasons for the objection. If the employer or carrier can show cause why the employee should not continue treatment with the named physician of the employee's choice, after notice to all parties and a prompt hearing by a worker's compensation magistrate, the worker's compensation magistrate may order that the employee discontinue treatment with the named physician or pay for the treatment received from the physician from the date the order is mailed. *The employer shall also supply to the injured employee dental service, crutches, artificial limbs, eyes, teeth, eyeglasses, hearing apparatus, and other appliances necessary to cure, so far as reasonably possible, and relieve from the effects of the injury.* If the employer fails, neglects, or refuses so to do, the employee shall be reimbursed for the reasonable expense paid by the employee, or payment may be made in behalf of the employee to persons to whom the unpaid expenses may be owing, by order of the worker's compensation magistrate. The worker's compensation magistrate may prorate attorney fees at the contingent fee rate paid by the employee. [Emphasis added.]

In *Wilmers*, the Court of Appeals addressed the scope of the services and devices that an employer can be called on to provide to an injured employee pursuant to MCL 418.315. It concluded that an entire custom equipped van, and not just the required vehicular modifications, could be considered a reasonably necessary "appliance" for the purpose of subsection 315(1). *Wilmers, supra* at 345-346. In doing so, the Court reversed the decision of the WCAC, which had found that

4

characterizing an entire vehicle as an appliance would be stretching the statute beyond the clear terms used by the Legislature.

Judge Young dissented from the decision of the Court of Appeals in *Wilmers*. Concluding that a van did not constitute an "appliance" within the meaning of subsection 315(1), he discussed the substantial difference between a van and the examples of appliances provided by subsection 315(1):

> I conclude that the Legislature's selection of the phrase "other appliances," when preceded by specific examples of artificial adaptive aids (such as crutches, hearing aids, dentures, glasses, etc.), creates an unambiguous legislative intent to mandate that an employer is obligated only to supply devices of *like* kind. . . . Consequently, I find it hard to reconcile with my construction of the statute the majority's view that a van is considered to be "like" such adaptive aids as a crutch, a hearing aid, false teeth, or a pair of eyeglasses. [*Id*. at 352.]

We agree with that dissenting opinion's conclusion regarding the proper understanding of "other appliances." Judge Young was applying the canon of statutory construction described formally as ejusdem generis. This Court has utilized this canon frequently in defining the scope of a broad term following a series of specific items. In discussing this canon in *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718-719; 629 NW2d 915 (2001), we described how meaning is given to the general term in that situation as follows: "[T]he general term is restricted to include only

5

things of the same kind, class, character, or nature as those specifically enumerated"; that is, because the listed items have a commonality, the general term is taken as sharing it.[1]

As Judge Young pointed out, the statutorily listed items, "dental service, crutches, artificial limbs, eyes, teeth, eyeglasses, hearing apparatus" share a commonality in that they are artificial adaptive aids that serve to directly ameliorate the effects of the medical condition. A van is dissimilar to the listed items in MCL 418.315(1) because it is not an artificial adaptive aid. Rather, a van is simply a means of transportation. The "adaptive aid" ameliorating the effects of the medical condition and permitting the utilization of the van is the vehicular modification. Accordingly, the phrase "other appliances" as used in subsection 315(1) should not be understood to encompass the van *itself*; it encompasses only the necessary modifications made to the van so that it can be operated by someone who is disabled. Therefore, defendants are not obligated to provide plaintiff with a van under the statutory provision at issue.

---

[1] In *A Matter of Interpretation* (Princeton, New Jersey: Princeton University Press, 1997), p 26, United States Supreme Court Justice Antonin Scalia explains that the ejusdem generis canon of statutory construction

> stands for the proposition that when a text lists a series of items, a general term included in the list should be understood to be limited to items of the same sort. For instance, if someone speaks of using "tacks, staples, screws, nails, rivets, and other things," the general term "other things" surely refers to other fasteners.

## V

We affirm the WCAC determination that the employer was not obligated to provide a van to plaintiff, and we overrule *Wilmers* for the reasons stated above.

In all other respects, we also affirm the decision of the WCAC. The WCAC had concluded that the particular motorized cart purchased by plaintiff was not medically necessary. This was a factual determination that was properly supported in the record and, thus, is conclusive. *Mudel v Great Atlantic & Pacific Tea Co,* 462 Mich 691, 703-704; 614 NW2d 607 (2000).

Defendants' application for leave to appeal as cross-appellants to contest the WCAC decision to reimburse plaintiff for the cost of the van conversion is denied as abandoned inasmuch as an appeal was not sought on this issue before the Court of Appeals. MCR 7.207.

> Maura D. Corrigan
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

CAVANAGH, J.

I concur in the result only.

> Michael F. Cavanagh

7

S T A T E   O F   M I C H I G A N

SUPREME COURT


HARRY E. WEAKLAND,

     Plaintiff-Appellant/Cross-Appellee,

v                                                                    No. 119495

TOLEDO ENGINEERING COMPANY,
INC., USF&G/ST. PAUL INSURANCE
COMPANY, and SECOND INJURY FUND,

     Defendants-Appellees/Cross-Appellants.
_____

WEAVER, J. (*concurring*).

Though not joining in the opinion, I concur in the result because the Worker's Compensation Appellate Commission correctly found that the van at issue was not an "appliance" pursuant to MCL 418.315(1).

**Elizabeth A. Weaver**

# STATE OF MICHIGAN

## SUPREME COURT

HARRY E. WEAKLAND,

    Plaintiff-Appellant
    Cross-Appellee,

v                                       No. 119495

TOLEDO ENGINEERING COMPANY INC.,
USF&G/ST. PAUL INSURANCE COMPANY,
and SECOND INJURY FUND,

    Defendants-Appellees
    Cross-Appellants.

_____

KELLY, J. (*dissenting*).

The majority today overrules *Wilmers v Gateway Transportation Co (On Remand)*[2] and holds that a van is not an appliance within the meaning of subsection 315(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.315(1). *Ante* at 1. The decision furthers a trend of ignoring this Court's prior interpretation of the WDCA and adopts a strict and harsh approach that we have previously disavowed. Because I disagree and would reaffirm *Wilmers,* I respectfully dissent.

_____

[2] 227 Mich App 339; 575 NW2d 796 (1998).

# THE MAJORITY OVERRULES *WILMERS* WITHOUT ADDRESSING

## THE CASE LAW RELIED ON IN THE DECISION

In the past, this Court interpreted the WDCA and its predecessors broadly. For example, in *Wells v Firestone Tire & Rubber Co,*[3] Justice Cavanagh wrote for the majority:

> The statutory workers' compensation scheme was enacted for the protection of both employees and employers who work and do business in this state. The system assures covered employees that they will be compensated in the event of employment-related injuries. In addition, employers are assured of the parameters of their liability for such injuries. By agreeing to assume responsibility for all employment-related injuries, employers protect themselves from the possibility of potentially excessive damage awards. In order to effectuate these policies, the statute has been liberally construed to provide broad coverage for injured workers.

*Wells* reflected the Court's view that "[t]he social and remedial purposes of the [WDCA] were structured to quickly and assuredly compensate employees for injuries suffered." *Farrell v Dearborn Mfg Co*, 416 Mich 267, 280; 330 NW2d 397 (1982). Until recently, Michigan courts adhered to this view.[4]

---

[3] 421 Mich 641, 651; 364 NW2d 760 (1984).

[4] See, e.g., *Hagerman v Gencorp Automotive*, 457 Mich 720, 739; 579 NW2d 347 (1998); *Derr v Murphy Motor Freight Lines,* 452 Mich 375, 388; 550 NW2d 759 (1996); *Sobotka v Chrysler Corp (After Remand),* 447 Mich 1, 20, n 18; 523 NW2d 454 (1994); *Paschke v Retool Indus,* 445 Mich 502, 511; 519 NW2d 441 (1994); *Bower v Whitehall Leather Co*, 412 Mich 172, 191; 312 NW2d 640 (1981); *Century Indemnity Co v Schmick*, 351 Mich 622, 626; 88 NW2d 622 (1958); *McCaul v Modern Tile & Carpet, Inc*, 248 Mich App 610, 619; 640 NW2d 589 (2001); *James v Commercial Carriers, Inc*, 230 Mich App 533, 538-539; 583 NW2d

(continued...)

In *Wilmers*, the Court of Appeals interpreted the statute consistently with precedent. Specifically, the *Wilmers* Court reasoned:

> The Worker's Disability Compensation Act is *remedial legislation that should be interpreted liberally in a humanitarian manner in favor of the injured employee.* Wells v Firestone Tire & Rubber Co, [*supra* at 651]; *Matney v Southfield Bowl*, 218 Mich App 475, 486; 554 NW2d 356 (1996). *Literal constructions that produce unreasonable or unjust results that are inconsistent with the purpose of the act should be avoided.* Rowell v Security Steel Processing Co, 445 Mich 347, 354; 518 NW2d 409 (1994). . . . [*T*]*he clear purpose of § 315(1) is to provide the injured employee with such services and products as are reasonably necessary to cure or relieve the effects of injury.* Here, plaintiff's evidence (which was never rejected by the magistrate or the WCAC) indicated that one of the effects of his injury is a loss of mobility, including an inability to use an ordinary car, or even a specially equipped one, for transportation. We conclude that under these circumstances the entire specially equipped van that plaintiff requires for transportation, and not just its special modifications, may be considered a reasonably necessary "appliance" for purposes of § 315(1). [*Wilmers, supra* at 345-346 (emphasis added).]

Today, the Court rejects *Wilmers* and the cases on which it relied. It does so without addressing *Wilmers'* interpretation of the WDCA, focusing instead on Judge Young's

---

⁴ (...continued)
913 (1998); *Tulppo v Ontonagon Co*, 207 Mich App 277, 283; 523 NW2d 883 (1994); *Isom v Limitorque Corp*, 193 Mich App 518, 522-523; 484 NW2d 716 (1992); *Andriacchi v Cleveland Cliffs Iron Co*, 174 Mich App 600, 606; 436 NW2d 707 (1989); *Gross v Great Atlantic & Pacific Tea Co*, 87 Mich App 448, 450; 274 NW2d 817 (1978); *Welch v Westran Corp*, 45 Mich App 1, 5; 205 NW2d 828 (1973), aff'd 395 Mich 169 (1975).

dissent.

This omission is not surprising. Earlier, the majority was confronted with the fact that the WDCA has long been broadly interpreted, and the majority chose to ignore that fact. For instance, in *Crowe v Detroit*,[5] the dissent noted that the majority "ignores our duty to recognize that the WDCA is a remedial statute that should be liberally construed in favor of the employee, and must be construed to grant rather than deny benefits." *Id.* at 22 (Cavanagh, Weaver, and Kelly, JJ., dissenting).

The majority reacted dismissively, stating:

> We do not think that the statute at issue is ambiguous.
>
> In any event, if the statutory language were ambiguous, our first duty is to attempt to discern the legislative intent underlying the ambiguous words. Only if that inquiry is fruitless, or produces no clear demonstration of intent, does a court resort to the remedial preferential rule relied on in the dissent. [*Id.* at 13.]

The response indicates the majority's preferred method of legislative interpretation. However, it avoids the fact that Michigan courts have consistently applied a different interpretation than the majority does to the WDCA. Thus, without overruling or distinguishing it, the majority ignores past case law because the majority disagrees with it.

Likewise, the majority disregarded the accepted

---

[5] 465 Mich 1; 631 NW2d 293 (2001).

4

interpretation of the WDCA in *DiBenedetto v West Shore Hosp*, 461 Mich 394; 605 NW2d 300 (2000). There, the majority noted the accepted interpretation, but ignored it, holding that the "plain language of the statute" precluded a broad interpretation, "no matter how liberally that language is construed." *Id*. at 406. Moreover, the majority did not acknowledge that "any inquiry into the applicability of the [WDCA]" involved principles of liberal construction, but instead restricted those principles to where the statutory language was ambiguous. *Hagerman v Gencorp Automotive*, 457 Mich 720, 739; 579 NW2d 347 (1998).

The Court of Appeals in *Wilmers* applied our longstanding broad interpretation of the WDCA. The majority would overrule the result the *Wilmers* Court reached without confronting or even acknowledging the precedent that *Wilmers* relied on.

Of course, a dearth of analysis begs a dearth of argument. It is difficult to analyze the majority's reasoning in changing the law when it provides no reasoning to question. The opinion states why the majority's view is correct, but fails to state why the old view is wrong.

THE *WILMERS* COURT REASONABLY CONCLUDED THAT A VAN

COULD BE AN "APPLIANCE" UNDER SUBSECTION 315(1)

The *Wilmers* Court held that a specially modified van could be an "appliance" under subsection 315(1). The section

5

at issue provides:

> The employer shall also supply to the injured employee dental service, crutches, artificial limbs, eyes, teeth, eyeglasses, hearing apparatus, and *other appliances necessary to cure, so far as reasonably possible, and relieve from the effects of the injury. . . .* [MCL 418.315(1) (emphasis added).]

Specifically, *Wilmers* held that loss of mobility was a consequence of the appellant's injury and that a van was necessary to give the appellant a sense of normalcy. *Wilmers, supra* at 345-346.

The dissent in *Wilmers* and the majority here assert that "appliance" cannot mean a van because a van is not similar to or related to the other items listed in MCL 418.315(1). *Ante* at 6. They would restrict "appliance" to mean "artificial adaptive aids that serve to directly ameliorate the effects of a medical condition." *Ante* at 6.

As in *Wilmers,* the plaintiff here cannot walk without difficulty.[6] This lack of mobility is the result of a work-related medical condition in both cases. What could ameliorate a lack of mobility? I submit that a van reasonably falls within the majority's definition of an appliance in

---

[6] The Worker's Compensation Appellate Commission rejected plaintiff's claim for reimbursement for the van on the basis of factual distinctions between this case and *Wilmers*, even though it applied *Wilmers*. However, the majority opinion today would foreclose the possibility of a van being considered as an appliance under the WDCA in any factual situation.

certain cases.

The majority argues that a van is unlike crutches, prostheses, or hearing aids.  However, in some cases a van serves the same purpose as crutches or prostheses because it allows an individual freedom of movement.  Moreover, subsection 315(1) also includes the term "dental service" as well as artificial teeth.  Dental service is a broad term that is unlike any of the others and it may include anything from cosmetic surgery to jaw repair.

The *Wilmers* Court was not alone in holding that the term "appliance" may include a van in a worker's compensation context.  It noted:

> Our conclusion is supported by the decisions of courts in several other states that have held that specially equipped vans for paraplegics may constitute, in their entirety, a compensable "appliance" or "apparatus" under worker's compensation statutes similar to § 315(1). *Terry Grantham Co v Industrial Comm*, 154 Ariz 180; 741 P2d 313 (Ariz App, 1987); *Aino's Custom Slip Covers v DeLucia*, 533 So 2d 862 (Fla App, 1988); *Edgewood Boys' Ranch Foundation v Robinson*, 451 So 2d 532 (Fla App, 1984); *Manpower Temporary Services v Sioson*, 529 NW2d 259 (Iowa, 1995); *Mississippi Transportation Comm v Dewease*, 691 So 2d 1007 (Miss, 1997).  We find the following passage from the Iowa Supreme Court's decision in *Manpower Temporary Services* particularly instructive:

> "We begin with the unusually strong medical evidence of necessity and of the record that [the injured employee's] family status and past lifestyle reveal no other use for the van.  That evidence refutes any contention that the van is a frill or luxury and reveals what can be described as an appliance, not greatly different from crutches or a

7

wheelchair. The point is that a van is necessary in order to make [the injured employee's] wheelchair fully useful.

"In another context, like other courts, we have agreed with the dictionary definition that describes the term 'appliance' as 'a means to an end.' *Murray v Royal Indem Co*, 247 Iowa 1299, 1301; 78 NW2d 786, 787 (1956). The 'end' of the van is merely an extension of [the injured employee's] 300-pound wheelchair. Without a van she is, more than need be, a prisoner of her severe paralysis. The [factfinder] could thus reasonably view the van as an appliance, a necessary part of [the injured employee's] care. [529 NW2d 264.]"

We acknowledge that there are decisions from courts in some other states that deny worker's compensation coverage for specially equipped cars and vans on the ground that such vehicles simply do not constitute a medical apparatus or device, and decisions from courts in still other states that allow reimbursement only for the cost of the special vehicle modifications or allow the employer to offset the cost of the vehicle before modification with the cost of an average, midpriced car of the same year. However, we are persuaded that, under the circumstances of this case, and given the kind of substantial vehicle modifications that this plaintiff requires, the entire vehicle may here be considered an "appliance" covered by § 315(1), even though it is not actually necessary to rebuild the entire vehicle to accommodate the handicap. *The WCAC's interpretation of the term "appliance" is unduly restrictive and contrary to the principle of interpreting the Worker's Disability Compensation Act in a liberal and humanitarian manner so as to effectuate the remedial goal of relieving injured workers from the effects of injury.* [*Wilmers, supra* at 346-347.]

CONCLUSION

Therefore, considering the majority's own malleable

definition of "appliance"[7] and other jurisdictions' decisions, I submit that the *Wilmers* Court reasonably concluded that a van could be an "appliance" under subsection 315(1). I would reaffirm *Wilmers* as good law.

Marilyn Kelly

---

[7] *Ante* at 5.